IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
February 4, 2014 Session

STATE OF TENNESSEE v. ARMARD REEVES

Appeal from the Criminal Court for Shelby County
No. 10-06739     James Lammey, Jr., Judge

No. W2012-02656-CCA-R3-CD  -  Filed April 17, 2014

The defendant, Armard Reeves, was convicted of one count of unlawful and knowing possession with intent to deliver three hundred pounds (300 lbs) (136,050 grams) or more of a controlled substance, to wit: marijuana.  The trial court sentenced the defendant as a Range I offender to the maximum sentence of twenty-five years in the Tennessee Department of Correction.  The defendant was arrested as a part of a larger investigation that Immigrations and Customs Enforcement ("ICE") and Homeland Security Investigations ("HSI") were conducting into narcotics distribution. On appeal, the defendant argues that: (1) the trial court erred when it failed to instruct the jury as to the lesser-included offense of facilitation; (2) the State must prove beyond a reasonable doubt that the defendant knowingly possessed the amount of marijuana in question; (3) the trial court erred when it failed to instruct the jury that the defendant must knowingly possess certain amounts of marijuana; (4) the evidence was insufficient to support his conviction; (5) the trial court erred when it failed to grant the defendant's motion to suppress; and (6) the trial court improperly sentenced the defendant to the maximum sentence for a Range I offender.  After a thorough review of the record we conclude that facilitation was properly omitted as a jury instruction, that the "knowing" mens rea requirement does not apply to the amount of marijuana, the evidence was sufficient to support the defendant's conviction, the trial court did not err in denying the motion to suppress, and that the defendant was properly sentenced to the maximum term of incarceration.

 Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which ALAN E. GLENN and CAMILLE R. MCMULLEN, JJ., joined.

Joseph A. McClusky, Lorna S. McClusky, and William Dennis Massey, Memphis, Tennessee, for the appellant, Armard Reeves.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Amy P. Weirich, District Attorney General; and Christopher Scruggs, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS AND PROCEDURAL HISTORY

On June 22, 2010, the defendant was pulled over by police for speeding. He was arrested after a canine sweep of the car alerted to the presence of narcotics and officers subsequently found 460 pounds of marijuana in the back of the U-Haul rental truck the defendant was operating.

Officer Patrick McKenna of ICE first met the defendant on June 17, 2010, in Tucson, Arizona at the home of Jesus Rodriguez. As part of his undercover investigation, Officer McKenna made an arrangement with Mr. Rodriguez to transport 500 pounds of marijuana to the State of Tennessee. At Mr. Rodriguez's residence, Agent McKenna was introduced to the defendant, who called himself "Drew." Agent McKenna was described to the defendant as "a person who was going to be able to move his merchandise from Tucson to Tennessee."

Agent McKenna informed the men that he charged $100 per pound to transport 500 pounds of marijuana. He informed the defendant that he usually did not transport any amount under 800 pounds, but would "do the deal" because he liked Mr. Rodriguez. Agent McKenna advised the defendant that he would not release any of the marijuana to the defendant until he received payment in full. The defendant stated that "the fee had already been paid" and then looked toward Mr. Rodriguez, who placed a bag on the table which contained $25,000. In the presence of the defendant, Agent McKenna and Mr. Rodriguez made arrangements for the second half of his fee to be picked up later in Tucson. Upon receipt of the payment, Agent McKenna would release the marijuana to the defendant. Agent McKenna asked the defendant where he wanted the "merchandise," as Mr. Rodriguez had previously advised him that the marijuana would be going to Jackson, Tennessee. The defendant responded, "It doesn't matter. It could be Memphis or Jackson because I've got locations in both places." The defendant subsequently decided that the marijuana would go to Memphis, Tennessee.

After the agreement was finalized, a fellow undercover ICE officer assisted several associates of Mr. Rodriguez in loading the marijuana into the undercover officer's vehicle, and Agent McKenna and the officer took the marijuana back to the ICE office. The defendant did not participate in the loading of the marijuana. After weighing the marijuana,

the agents determined that there was a total of 470 pounds, rather than 500 pounds, of marijuana. Agent McKenna stated that the marijuana appeared to be intended for distribution due to the way it was packaged. Some of the marijuana was tightly wrapped in brown contact paper, with the other half tightly packaged in clear cellophane wrapping. Based on his prior undercover work, Agent McKenna indicated that marijuana was packaged this way so it could be broken down and either put into smaller bags or sold off by the pound. He stated that marijuana kept for personal usage was not stored in the same fashion. Agent McKenna estimated the street value of the marijuana to be several hundred thousand dollars.

ICE agents arranged to fly the marijuana from Tucson to Memphis in order to set up the delivery to the defendant. Once in Memphis, Agent McKenna coordinated with local Memphis ICE agents, Drug Enforcement Agency ("DEA") agents, and local members of the interstate interdiction task force. Agent McKenna met with these officers, including Sergeant Kevin Helms and Deputy Donald Wolfe of the Shelby County Sheriff's Department, on June 22, 2010. Sergeant Helms and Deputy Wolfe were a part of the criminal interdiction unit. Agent McKenna apprised Sergeant Helms and Deputy Wolfe of his ongoing investigation, and they began to formulate a plan to deliver the marijuana to the defendant and subsequently arrest him without compromising the investigation. Agent McKenna requested that the officers perform a "wall-off" stop, that is, a stop where the officers have probable cause to pull over the defendant for an unrelated offense, such as a moving violation, and seize the drugs in the course of conducting a normal traffic stop, so as not to expose the extent of the full drug investigation.

Agent McKenna and the defendant agreed to meet at a Home Depot on June 22, 2010, for the defendant to take possession of the marijuana. HSI agents had loaded the marijuana into a ten-foot U-Haul truck, and it was agreed that the defendant would receive the keys to the truck once Agent McKenna received confirmation of the second half of his payment. When the defendant arrived at the Home Depot, he entered Agent McKenna's vehicle and remained there for roughly "ten to twenty minutes" until Agent McKenna received "the green light" that the second half of the payment was delivered. Agent McKenna then handed the defendant the keys to the U-Haul. Agent McKenna testified that the defendant agreed to return the U-Haul to the Home Depot parking lot and that the defendant stated he would return in about fifty minutes. The defendant then went to the U-Haul and entered the truck without examining the contents in the back of the truck. Sergeant Helms was parked in an area close to the Home Depot to wait for the defendant to drive by. Once Sergeant Helms spotted the truck he began to follow it and paced the defendant driving sixty-four miles per hour in a sixty-five miles per hour speed limit zone. The speed limit dropped to fifty-five miles per hour, but the defendant continued to drive at sixty-four miles per hour. Sergeant Helms proceeded to pull the defendant over for violating the speed limit.

A video of the traffic stop was played for the jury. When Sergeant Helms approached the U-Haul, he had to knock on the passenger window several times to get the attention of the defendant. Sergeant Helms informed the defendant why he had stopped him and asked the defendant where he was going and where he picked up the truck. The defendant could not tell Sergeant Helms exactly where he was taking the truck and could not produce a registration for the truck, stating that he picked it up "from a buddy."

Sergeant Helms noted that the defendant's evasiveness was suspicious and that the defendant seemed nervous, so Sergeant Helms began to ask him if the truck contained any illegal items. When the defendant said that it did not, Sergeant Helms asked for consent to search the vehicle, which the defendant did not give. After the defendant did not give his consent to search the vehicle, Sergeant Helms radioed for a canine unit, and Deputy Wolfe arrived shortly thereafter with his canine partner, Hydro, a certified narcotics detecting dog.

Sergeant Helms informed the defendant that Deputy Wolfe was going to "run the dog around the vehicle," to which the defendant said "Ok." As Sergeant Helms walked beside the U-Haul to speak with Deputy Wolfe, he exclaimed, "Oh my God I smell weed." Deputy Wolfe and Hydro approached the U-Haul and circled it on the right driver side of the vehicle when the dog alerted to the odor of narcotics. Both Sergeant Helms and Deputy Wolfe testified that they too smelled the odor of narcotics emanating from the U-Haul.

After Hydro indicated the odor of narcotics, the officers placed the defendant in the back of Sergeant Helms' vehicle and retrieved the keys to the U-Haul. The officers then opened the rear of the truck and found multiple bundles of marijuana.

Deputy Wolfe took the marijuana to the Tennessee Bureau of Investigation ("TBI") for testing. Shalandus Harris, a special agent forensic scientist in the identification unit in the TBI, testified that she tested the bundles and determined that they were marijuana. After unwrapping the bundles, Ms. Harris calculated the weight of the marijuana to be approximately 460.2 pounds.

On October 26, 2010, a Shelby County Grand Jury indicted the defendant for unlawful and knowing possession of a substance containing marijuana with intent to sell three hundred pounds (300 lbs.) (136,050 grams) or more in violation of Tennessee Code Annotated section 39-17-417 and unlawful and knowing possession of a substance containing marijuana with intent to deliver three hundred pounds (300 lbs.) (136,050 grams) or more in violation of Tennessee Code Annotated section 39-17-417. [I, 1-2]. Prior to trial, the defendant filed a motion to suppress the evidence on the grounds that police had illegally conducted a search of his vehicle, which the trial court denied. The defendant's trial was held from April 23-

April 27, 2012. After hearing testimony from Officers Helms and Wolfe and Agents McKenna and Harris, a jury found the defendant not guilty of possession with intent to sell but returned a guilty verdict as to possession with intent to deliver.

The trial court sentenced the defendant as a Standard Range I offender to serve twenty-five years with a thirty percent release eligibility. Based on his prior convictions, the defendant qualified as a Range II offender, but the State failed to file a timely notice of enhancement. The trial court sentenced the defendant to the maximum sentence allowable as a Range I offender because the trial court found that the defendant had prior convictions that would have classified him as a Range II offender, that the defendant committed a Class A felony while out on bond, and that the defendant was the leader in the commission of an offense involving more than two criminal actors.

The defendant filed a motion for a new trial on August 2, 2012, which the trial court denied on September 18, 2012. The defendant filed a timely notice of appeal on October 18, 2012. We proceed to review his claims.

**ANALYSIS**

**I. Facilitation Instruction**

The defendant argues that the trial court erred by failing to instruct the jury as to the lesser-included offense of facilitation. The State contends that the evidence was insufficient to support an instruction on facilitation.

The trial court has a duty to instruct the jury on any lesser-included offenses of the charged offense when such instruction is supported by the evidence. *State v. Bowles*, 52 S.W.3d 69, 74 (Tenn. 2001). The issue of whether a given offense should have been submitted to the jury as a lesser-included offense raises a mixed question of fact and law. As a result, an appellate court reviews the trial court's charge to the jury de novo with no presumption of correctness. *State v. Moore*, 77 S.W.3d 132, 134 (Tenn. 2002).

Appellate courts must ask three questions if an issue is raised as to the trial court's failure to instruct the jury on a lesser-included offense. The court must determine: 1) whether an offense is a lesser-included offense; 2) whether the evidence supports a lesser-included offense instruction; and 3) whether an instruction error is harmless. *State v. Allen*, 69 S.W.3d 181, 187 (Tenn. 2002). Under *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999), an offense is a lesser-included offense if:

(a) all of its statutory elements are included within the statutory elements of the

offense charged; or

(b) it fails to meet the definition in part (a) only in the respect that it contains a statutory element or elements establishing

(1) a different mental state indicating a lesser kind of culpability; and/or

(2) a less serious harm or risk of harm to the same person, property, or public interest; or

(c) it consists of

(1) facilitation of the offense charged or of an offense that otherwise meets the definition of lesser-included offense in part (a) or (b) or;

(2) an attempt to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b) or;

(3) solicitation to commit the offense charged or an offense that otherwise meets the definition of lesser-included offense in part (a) or (b).

*Burns*, 6 S.W.3d at 466-67.

Tennessee Code Annotated section 39-11-403 defines facilitation of a felony as "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." T.C.A. § 39-11-403 (2010). Under subsection (c)(1) of the *Burns* test, facilitation of possession with intent to deliver 136,050 or more grams of a controlled substance is a lesser-included offense of possession with intent to deliver.

If an offense is found to be a lesser-included offense, the court must determine whether the evidence justifies a jury instruction on the lesser-included offense. *Bowles*, 52 S.W.3d at 75. The trial court must first determine "whether any evidence exists that reasonable minds could accept as to the lesser-included offense." *Burns*, 6 S.W.3d at 469. When "making this determination the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense" without judging the credibility of the evidence. *Id.* Finally, the trial court "must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense." *Id.*

The evidence, rather than the theories of the parties, determines whether an instruction on a lesser-included offense should be given. *Allen*, 69 S.W.3d at 188. The decision to convict on a lesser-included offense should not be taken from the jury simply because the element distinguishing the greater offense from the lesser offense is "uncontroverted." *Id.* at 189. If the evidence justifies a lesser-included offense instruction, failure to charge the offense is error even though the evidence was sufficient to support the greater offense. *Burns*, 6 S.W.3d at 472.

The defendant argues that the evidence did not clearly indicate whether he accepted the marijuana in Memphis to "deliver himself or if he was simply acting as a limited transporter on behalf of Mr. Rodriguez." In order to find the defendant guilty of facilitation, a jury would have to conclude that the defendant provided substantial assistance to Mr. Rodriguez, knowing that he intended to deliver marijuana, but without intent to promote the delivery of the marijuana or benefit from its delivery. That is simply not the case here. The defendant indicated that the marijuana belonged to him when he first met Agent McKenna, as Agent McKenna testified that he was introduced to the defendant "as a person who was going to be able to move *his* [the defendant's] merchandise from Tucson to Tennessee." (Emphasis added). The defendant ultimately selected Memphis as his destination, but not before telling Agent McKenna that it did not matter where the marijuana was delivered, that "it could be Jackson or Memphis because I've got locations in both places."

The defendant argues that the facts in his case are analogous to those in *State v. Jimmy Jackson*, No. M2011-01077-CCA-R3-CD, 2012 WL 5873506 (Tenn. Crim. App. Nov. 21, 2012), a case where this court reversed a defendant's convictions for possession of 0.5 grams or more of cocaine with intent to sell and intent to distribute because the trial court did not provide a jury instruction as to facilitation. This court held that because there was evidence to indicate that the defendant was paid $50 to accompany a confidential informant to a gas station, that the defendant knew he was participating in a drug transaction but was only there to help out the confidential informant, and that the defendant was selling drugs for someone else, it was reversible error not to include the jury instruction for facilitation. *Id.* at *6-7. The defendant argues that his case is akin to *Jackson* because the transport fee was arranged before Agent McKenna ever met the defendant, because agents never witnessed the defendant handle or inspect the marijuana, and because agents neither heard the defendant order marijuana from Mr. Rodriguez, nor witnessed a transfer of money between the defendant and Mr. Rodriguez.

The defendant's reliance on *Jackson* is misplaced. In *Jackson*, another individual was at the location of the drug transaction with the defendant, and the defendant testified that he was "serving that cocaine for someone else." *Id.* at *6. There was evidence to indicate that the defendant was working in coordination with and on behalf of other individuals. That is not the case here. The trial court noted that the defendant was alone in Memphis when he met Agent McKenna. The trial court stated that "[i]f there was someone else with him that was directing him in Memphis - someone that was telling him what to do while he was here in Memphis, then I could see you make that argument [for facilitation]." However the defendant never indicated that he was working in coordination with someone else in Memphis, or picking up the marijuana to transport it on behalf of someone else. *See State v. Rodrigues D. Pruitt*, No. M2005-01862-CCA-R3-CD, 2006 WL 2682822, at *7 (Tenn. Crim. App. Sept. 8, 2006) (concluding that exclusion of facilitation instruction was proper

when the defendant was alone when approached by an officer and admitted he was selling drugs to support his children and pay his bills).

We conclude that the trial court correctly omitted facilitation as a lesser-included offense of unlawful possession of a controlled substance with the intent to deliver. Viewing the evidence in the light most favorable to the existence of the offense, the defendant, acting alone in Memphis, took delivery of marijuana with a street value of several hundred thousand dollars and was transporting it to his "place" in Memphis. There was no indication that the defendant was acting in concert with other individuals in Memphis, or that he was simply doing a favor for Mr. Rodriguez. Thus, there was no basis for a jury to determine that the defendant did not intend to promote the delivery of marijuana or benefit from its delivery. Accordingly, the defendant is not entitled to any relief on this claim.

## II. Statutory Construction

The defendant argues that a conviction pursuant to Tennessee Code Annotated section 39-17-417 requires the State to prove beyond a reasonable doubt that the defendant knowingly possessed a specific quantity of marijuana. Tennessee Code Annotated section 39-17-417 states that "it is an offense for a defendant to knowingly . . . possess a controlled substance with the intent to manufacture, deliver or sell the controlled substance." T.C.A. § 39-17-417 (a)(4). The defendant contends that the term "knowingly" in the statute applies to the amount of a controlled substance in addition to the possession of and intent to deliver a controlled substance elements. *See* T.C.A. § 39-17-417 (a), (j). Essentially, the defendant argues that it is the burden of the State to prove beyond a reasonable doubt that the defendant not only knowingly possessed marijuana and intended to deliver it, but also that he knew the weight of the marijuana that he possessed. The defendant claims that a jury cannot convict him of this crime unless the State proves that he knew that he actually possessed 136,050 grams or more of marijuana.

Issues of statutory construction present questions of law that this court reviews de novo without a presumption of correctness. *State v. Edmonson*, 231 S.W.3d 925, 927 (Tenn. 2007). This court should give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope. *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008). When the language of a statute is clear and unambiguous, this court "must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language and, in that instance, we enforce the language without reference to the broader statutory intent, legislative history, or other sources." *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009).

Tennessee Code Annotated section 39-17-417 states in pertinent part:

(a) [i]t is an offense for a defendant to knowingly:

. . . .

       (4) Possess a controlled substance with intent to manufacture, deliver, or sell the controlled substance.

. . . .

(j) A violation of subsection (a) with respect to the following amounts of a controlled substance, or conspiracy to violate subsection (a) with respect to such amounts is a Class A felony and, in addition, may be fined not more than five hundred thousand dollars ($500,000):

. . . .

       (13) (A) Three hundred pounds (300 lbs.) (136,050 grams) or more of any substance containing marijuana.

T.C.A. § 39-17-417 (a)(4), (j)(13)(A).

The defendant argues that Tennessee case law has not specifically addressed the issue of whether the "knowing" mens rea applies to the quantity of the controlled substance. However, this court has stated numerous times before that to convict a defendant of possession of a controlled substance with intent to deliver that the State was required to prove beyond a reasonable doubt that the defendant: (a) knowingly possessed a controlled substance, (b) with the intent to deliver, and (c) the actual weight of the controlled substance. *State v. Belew*, 348 S.W.3d 186, 189 (Tenn. Crim. App. 2005); *State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000); *State v. Transou*, 928 S.W.2d 949, 955 (Tenn. Crim. App. 1996); s*ee also State v. Roger M. Staples*, No. M2003-01433-CCA-R3-CD, 2004 WL 1337265, at *7 (Tenn. Crim. App. June 14, 2004) (stating that when the State met this burden the question on appeal was whether the defendant knowingly possessed cocaine). The court in all of these cases did not attach the "knowing" element to the amount of the controlled substance, and limited the "knowing" requirement to the possession and intent to deliver the controlled substance. In those cases, the defendants did not argue that the State must prove that the defendant knew the amount of controlled substance in his possession, and thus this court was not called upon to thoroughly parse the language of the statute. We address this issue now because the defendant bases the majority of his argument on the premise that the State is required to prove that the defendant knowingly possessed the amount of marijuana in question. Because this court has never explicitly conducted an interpretation of Tennessee Code Annotated section 39-17-417, we proceed to do so to determine whether the mens rea element of the statute extends to the amount of the controlled substance in possession of the defendant.

We conclude that the mens rea element of Tennessee Code Annotated section 39-17-417 does not apply to the quantity of the controlled substance, but rather applies only to the

manufacture, delivery, sale, or possession with the intent to manufacture, deliver, or sell a controlled substance. A plain reading of the statute indicates that subsection (a) sets forth the elements of the offense and subsections (b) through (j) set forth the penalties for violating subsection (a). T.C.A § 39-17-417 (a)-(j). The word "knowingly" appears only a single time in the statute, and only in subsection (a) where the offense is defined. T.C.A. § 39-17-417 (a). The legislature uses a variation of the language "a violation of subsection (a) with respect to" at the outset of each subsection. T.C.A. § 39-17-417 (b)-(j). The "with respect to" language refers to the amount of a controlled substance in the possession of a defendant, and the legislature defines the penalty for violating the statute based on the amount of the controlled substance in a defendant's possession.

We conclude that in order to convict the defendant of a violation of Tennessee Code Annotated section 39-17-417, the State must prove beyond a reasonable doubt that the defendant knowingly possessed a controlled substance, intended to manufacture, deliver, or sell the controlled substance, and the actual weight of the controlled substance. The mens rea requirement of subsection (a) is independent of the quantity of the controlled substance in subsections (b)-(j). There is no "knowing" element to prove as to the amount of the controlled substance; the amount serves merely to delineate the punishment for violating subsection (a) and classifies the offense as a different grade of felony or misdemeanor based on the amount of the controlled substance. A defendant is in violation of the statute if he knowingly possesses a controlled substance and intends to deliver it, regardless of whether he had knowledge as to the actual amount of the controlled substance. The amount of a controlled substance is an objective measure used to determine punishment once the subjective intent of the defendant has been proven.

The precedent of this court lends support to our conclusion that the "knowing" element of the statute is limited to the possession of and intent to distribute the controlled substance. Although the issue was not directly addressed, this court, in *State v. Frank Gaitor*, No. E2001-02531-CCA-R3-CD, 2002 WL 31863299 (Tenn. Crim. App. Dec. 23, 2002), examined the language of Tennessee Code Annotated section 39-17-417 (a) and concluded that the "mens rea of knowing focuses on the defendant's possession of cocaine" and that "the crime requires that the defendant be aware that he is in unlawful possession of cocaine." *Gaitor*, 2002 WL 31863299, at *12. The court stated that possession of a controlled substance with intent to resell "focuses on the nature of the defendant's conduct and not a particular result." *Id.* Thus, the court's holding implied that the knowing requirement of the statute did not extend to the amount of the controlled substance, but rather was limited to the possession of the controlled substance.

This court's analysis of the mens rea requirement in the context of the Drug-Free School Zone Act also provides guidance as to the correct interpretation of Tennessee Code

Annotated section 39-17-417. This court has held that the Drug-Free School Zone Act is an enhancement statute and therefore does not require a specific mens rea to conclude that a defendant violated the statute. *State v. Alejandro Neave Vasquez*, No. M2010-02538-CCA-R3-CD, 2012 WL 5989875, at \*13 (Tenn. Crim. App. Nov. 28, 2012); *see also State v. Smith*, 48 S.W.3d 159, 167 (Tenn. Crim. App. 2000); *see State v. Jenkins*, 15 S.W.3d 914, 917 (Tenn. Crim. App. 1999) (holding that if the Drug-Free School Zone Act was intended to be an enhancement statute, no explicit mens rea language is required). Thus, the State is not required to prove that a defendant knowingly committed the offense within 1000 feet of a school zone; it is sufficient simply to prove that the offense occurred within a prohibited area in order to enhance the defendant's punishment.

Even if we were to accept the interpretation of the statute that the defendant proposes, the proof suggests that the defendant was in fact aware that he possessed over 136,050 grams of marijuana. The evidence showed that Agent McKenna told the defendant that he usually did not transport less than 800 pounds, but would transport this smaller amount as a favor to Mr. Rodriguez. The evidence also showed that Agent McKenna quoted the defendant a price for the transport of 500 pounds of marijuana, that the defendant pointed to Mr. Rodriguez and stated that the fee had already been paid, and that the defendant witnessed Mr. Rodriguez hand Agent McKenna a bag of money. Further, the defendant later waited with Agent McKenna until Agent McKenna received confirmation of the second half of the transport fee. This indicates that he was aware that the full fee for transporting 470 pounds of marijuana had been paid, and that he could then take possession of that amount of marijuana. 136,050 grams is equivalent to 300 pounds and there is sufficient evidence to indicate that the defendant was aware that he was taking possession of 470 pounds of marijuana, an amount that exceeds 136,050 grams.[1]

## III. Jury Instructions

At trial, the defendant made a request for a special jury instruction regarding the weight of the marijuana. The defendant asked that the jury be instructed that in order to find the defendant guilty that the State must have proven beyond a reasonable doubt that the defendant knew that he possessed a specific quantity of marijuana, in accordance with his above argument.

The trial court refused to give the special instructions, finding that the "knowing" element of the statute did not apply to the weight of the marijuana. The trial court ultimately instructed the jury that in order to find the defendant guilty of possession with intent to sell

---

[1] While Agent McKenna was paid to transport 470 pounds of marijuana to the defendant, the defendant was ultimately arrested in possession of 460.2 pounds of marijuana.

or deliver a controlled substance the State must have proven beyond a reasonable doubt that the defendant knowingly possessed marijuana and that the defendant intended to deliver or sell such controlled substance. The instructions further stated that if the jury found the defendant guilty of unlawful possession of a controlled substance with intent to sell or deliver beyond a reasonable doubt that the jury must go further and "fix the range of weight of the controlled substance. The [S]tate has the burden of proving this weight beyond a reasonable doubt."

When the trial court's instructions to the jury correctly, fully, and fairly state the applicable law, it is not error to refuse to give a special requested instruction. *State v. Inlow*, 52 S.W.3d 101, 107 (Tenn. Crim. App. 2000); *State v. Forbes*, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995). This court must review the entire jury charge; we can find error only if, when read as a whole, the charge fails to fairly submit the legal issues or misleads the jury as to the applicable law. *State v. Phipps*, 883 S.W.2d 138, 142 (Tenn. Crim. App. 1994).

We conclude that this jury charge fully and fairly states the law as it applies to Tennessee Code Annotated section 39-17-417. Having previously determined that the statute does not require the State to prove that the defendant *knew* the amount of marijuana that he possessed, to charge the jury as the defendant requested would be an inaccurate statement of the law. Therefore, the trial court did not err by denying the defendant's request.

## IV. Sufficiency of the Evidence

The defendant next contends that because the State did not prove beyond a reasonable doubt that the defendant had knowledge of the amount of marijuana in his possession, the evidence is insufficient to support a conviction for a Class A felony, and thus his conviction must be modified to a Class E felony. We have already concluded that the State is not required to prove the actual amount of the controlled substance in possession of the defendant. Thus, that argument will not be addressed in our sufficiency of the evidence review.

When a defendant challenges the sufficiency of the evidence, the relevant question for this court is "whether, after reviewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The trier of fact, not this court, resolves questions concerning the credibility of witnesses, the weight and value to be given the evidence as well as all factual issues raised by the evidence. *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). This court may not re-weigh the evidence nor substitute its own inferences for those drawn by the jury. *State v. Evans*, 108 S.W.3d 231, 236 (Tenn. 2003). On appeal, the State is entitled to the strongest legitimate view of the evidence and

all reasonable inferences which may be drawn therefrom. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011). A verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, placing the burden on the accused to demonstrate why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

As we have previously stated, in order to sustain a conviction of unlawful possession of marijuana with the intent to deliver 136,050 grams or more, the State must prove that the defendant knowingly possessed marijuana, that he intended to deliver it, and that the amount was 136,050 grams (300 pounds) or more. T.C.A. § 39-17-417 (a)(4), (j)(13)(A). We conclude that the evidence is sufficient to support the finding of guilt in this case. The evidence showed that Agent McKenna agreed to transport, and did in fact transport, 460 pounds of marijuana from Tucson to Memphis for the defendant. Agent McKenna testified that the defendant met him in a Home Depot parking lot on June 22, 2010, in order to take possession of the marijuana. The defendant sat in a car with Agent McKenna and made small talk until Agent McKenna received a call confirming his payment. At that point Agent McKenna gave the defendant the keys to the U-Haul to take possession of the marijuana. After receiving the keys to the U-Haul, the defendant exited Agent McKenna's vehicle and entered the U-Haul which contained marijuana. The defendant was subsequently arrested with a total of 460.2 pounds of marijuana, a number in excess of 136,050 grams. Although the evidence also showed that no one saw the defendant handle the marijuana, either in Tucson or in Memphis, the jury chose to credit the testimony of the State's witnesses and infer that the defendant knew that the U-Haul was full of marijuana.

Accordingly, we conclude that the evidence was sufficient to demonstrate that the defendant knowingly possessed marijuana, intended to deliver marijuana, and that the amount was in excess of 136,050 grams. Therefore, the defendant is not entitled to any relief on this issue.

### V. Motion to Suppress

The defendant next contends that the trial court committed error by refusing to grant the defendant's pre-trial motion to suppress the evidence seized after the defendant was arrested. Specifically, he argues that the search of the U-Haul was invalid because officers had sufficient opportunity to obtain a search warrant but did not do so.

The findings of fact made by the trial court at the hearing on a motion to suppress are binding upon this court unless the evidence contained in the record preponderates against them. *State v. Ross*, 49 S.W.3d 833, 839 (Tenn. 2001). The prevailing party is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences that

may be drawn from that evidence. *State v. Hicks*, 55 S.W.3d 515, 521 (Tenn. 2001). However, the application of the law to the facts found by the trial court are questions of law that this court reviews de novo. *State v. Daniel*, 12 S.W.3d 420, 423 (Tenn. 2000). Absent a showing by the defendant that the evidence preponderates against the judgment of the trial court, this court must defer to the ruling of the trial court. *State v. Cribbs*, 967 S.W.2d 773, 795 (Tenn.1998).

We conclude that the trial court properly denied the defendant's motion to suppress. The trial court found that there was no basis in fact or in law to suppress the evidence. Officers lawfully pulled the defendant over for speeding. A canine search then indicated the presence of narcotics, which gave the officers probable cause to search the vehicle. There was no need for the officers to acquire a warrant because the lawful traffic stop and subsequent canine search alone were sufficient to give the officers probable cause to search the vehicle. *See State v. England*, 19 S.W. 3d 762, 766-67 (Tenn. 2000). The trial court noted that acquiring a search warrant would have placed the remainder of the investigation in jeopardy and using the "wall-off" technique to detain the defendant was acceptable. Thus, we conclude that the evidence contained in the record does not preponderate against a finding to suppress the motion. The defendant is not entitled to any relief on this issue.

## VI. Sentencing

Lastly, the defendant argues that the trial court imposed an improper sentence. The defendant specifically contends that the evidence did not support the trial court's finding that the defendant was the leader of this offense and that the trial court placed undue weight on the State's failure to file a timely notice of enhancement to classify the defendant as a Range II multiple offender.

This court reviews challenges to the length of a sentence under an abuse of discretion standard, "granting a presumption of reasonableness to within-range sentences that reflect a proper application of the purposes and principles of our Sentencing Act." *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The court will uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. In that situation this court may not modify a sentence "even if we would have preferred a different result." *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). The defendant bears the burden of proving that the sentence was improper. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The misapplication of an enhancement or mitigating factor by the trial court "does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 707. A sentence imposed by the trial court that is within the appropriate range should be upheld "[s]o long as there are other reasons

consistent with the purposes and principles of sentencing as provided by statute." *Id.*

At sentencing, the trial court found that the defendant was a Range I standard offender due to the State's failure to file a timely notice of enhancement. The trial court noted that the defendant had at least two prior convictions in federal court that would have been classified as Class B felonies in Tennessee. Because the defendant was convicted of a Class A felony, which carries a possible jail sentence of fifteen to twenty-five years, and should have been a Range II offender, the trial court stated that "it would be difficult to justify the minimum" of fifteen years.

As enhancement factors, the trial court looked to the defendant's prior criminal history, the conclusion that the defendant was the leader in the commission of an offense involving two or more criminal actors, and the fact that the defendant was free on bond when he was arrested in possession of marijuana. *See* T.C.A. § 40-35-114 (1); (2); (13)(A). The trial court identified no mitigating factors. The trial court "put a tremendous amount of weight" on the fact that the defendant should have been a Range II offender. The trial court sentenced the defendant to the maximum twenty-five year sentence as a Range I offender.

We conclude that the trial court did not abuse its discretion in sentencing the defendant to the maximum sentence of twenty-five years. The sentence was within the appropriate range for a Range I offender convicted of possession of over 136,050 grams of marijuana with intent to deliver. The trial court considered a variety of enhancement factors and did not find any mitigating factors. It was within the discretion of the trial court to impose the maximum sentence after considering the enhancement and mitigating factors present. We conclude that the sentence was imposed in a manner consistent with the purposes and principles of the Sentencing Act and was within the appropriate range. Thus, the defendant is not entitled to any relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____

JOHN EVERETT WILLIAMS, JUDGE

-15-